0.IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-02078-CNS-NRN

JON BRADLEY BERGFORD,
KALEB JEFFREY WALTON,
ISAIAH ROGELIO JUAREZ HOLLAND,
LEVI JEREMIAH FADDEN,

      Plaintiffs,

v.

TOWN OF PARKER, a Colorado political subdivision;
MITCHELL ODOM;
JORDAN DEIKNEIT;
JASON GOMEZ;
GRANT DURAN;
ALEX WILSON;
JAMIE WYNN;
GREGORY EPP;
KRISTOPHER BRYANT;
TAYLOR J. ORT;
ANYA ZAVADIL;
MICHAEL CLARKSON; in their individual capacities; and
DOUGLAS COUNTY PRIDE, a Colorado not-for-profit corporation,

      Defendants.

---

**ORDER**

---

Before the Court is Plaintiffs' Certified Emergency Motion for Temporary Restraining Order (TRO). ECF No. 4. For the following reasons, the Court DENIES Plaintiff's motion.[1]

## I.    BACKGROUND[2]

Two years ago, Plaintiffs Bergford and Fadden attended an event called PrideFest 2024. *See, e.g.,* ECF No. 4 at 1. The event was held in the Town of Parker's Salisbury Equestrian Park, a venue space owned by the City of Parker. *See id.* at 2. The event required a $1 ticket to attend. *See id.* at 2. At that time, Plaintiffs represent they were ejected from the event by certain Defendants. *See id.* at 2 ("At the 2024 Event, Bergford was arrested just for attending . . ."). Plaintiffs further represent that they were "denied access to the [2024] event because they wore t-shirts that read 'You are Loved.'" *Id.*; *see also id.* at 4. Plaintiffs Fadden, Walton, and Holland were subsequently arrested. *See id.* at 2, 3–4.

Now, Plaintiffs bring this motion to "ensure they may safely and securely exercise" their First Amendment rights at the upcoming Douglas County Pride Fest, scheduled to begin Sunday, May 17, 2026. *See id.* at 4. It is scheduled to occur in Salisbury Park. *See*

---

[1] Plaintiffs filed a Second Emergency Motion for Reassignment of U.S. District Judge Based on D.C.COLO.LCivR 40.1, arguing that this case should be reassigned because the Court is "not working today." ECF No. 9 at 3. Even presuming Plaintiffs *were* told this, which they represent without any evidentiary support, and no evidence appears to support such a proposition, whoever told Plaintiffs this was wrong. The Court is working today, as issuance of this order should make self-evident.

[2] The background facts are taken predominantly from Plaintiffs' Original Complaint for Injunctive Relief and for Money Damages, which appears to be verified, *see* ECF No. 1 at 41, the parties' briefs, and the briefs' supporting exhibits. *See Denver Homeless Out Loud v. Denver, Colorado*, 514 F. Supp. 3d 1278, 1285 (D. Colo. 2021), *vacated and remanded on other grounds*, 32 F.4th 1259 (10th Cir. 2022). Given the time-sensitive nature of Plaintiffs' request for relief, the Court presumes some familiarity with these materials, yet provides a factual recitation to the extent necessary in ruling on Plaintiffs' motion.

2

*id.* at 4. At least Defendant Bergford "intend[s] to attend." ECF No. 4-1 at 2. A "Code of Conduct" has been implemented for the event. *See, e.g.,* ECF No. 8-3 at 2 (Decl. of Commander Joe Degenhart). *Cf id.* ("Nor would the Police Department enforce PrideFest's Code of Conduct, inside or outside of the designated event area. We explained that if activities within the event space became disruptive or raised public safety concerns, law enforcement may have reason to step in and issue a citation or remove the individual from the event. [T]he Police Department would enforce the law equally to ensure the safety of PrideFest attendees and protestors."); ECF No. 8 at 10 ("[T]he Town of Parker Defendants . . . will not enforce the 2026 Code of Conduct."). The upcoming Pride Fest event has a dedicated "protest zone" that is "west of its primary event space for protestors who attend the event." *Id. See also* ECF No. 8-4 at 3.

Plaintiffs filed their complaint and TRO motion on May 13 and May 14, 2026, respectively. *See* ECF No. 1; ECF No. 4. This case was randomly reassigned to this Court today, May 15, 2026. *See* ECF No. 7. The Pride Fest event is set to occur within two days.

## II.    LEGAL STANDARD

The standards governing TROs and preliminary injunctions are the same. *See, e.g., Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020) (citation omitted); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018). To secure a TRO or an injunction, movants must show "(1) they are 'likely to succeed on the merits,' (2) they are 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [their] favor,' and (4) 'an injunction is

3

in the public interest.'" *M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1238 (10th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The final two factors "merge" when the government "is the opposing party." *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1278 (10th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "An injunction can issue only if each factor is established." *Denver Homeless*, 32 F.4th at 1278 (citing Winter, 555 U.S. at 23–24).[3]

### III.    DISCUSSION

The Court denies Plaintiffs' motion. Its discussion proceeds as follows. *First*, the Court reviews a preliminary *notice* issue raised by Defendants. *Second*, the Court proceeds to analyze the merits of Plaintiffs' TRO arguments, concluding that Plaintiffs have failed, as they must, to meet their burden as to the *irreparable harm* and *likelihood of success on the merits* TRO factors. *See, e.g., Denver Homeless*, 32 F.4th at 1278.

### A. Adequacy of Notice

Plaintiffs argue that the TRO motion should be denied because Plaintiffs Bergford and Fadden "failed to give adequate notice and any reason why notice should not be required." ECF No. 8 at 3. To be sure, certain cases support Defendants' position that such failure dooms a TRO's request for injunctive relief. *See, e.g. Partner Assessment*

---

[3] Plaintiffs urge application of a standard that requires a "substantial likelihood of success on the merits." ECF No. 4 at 5. The Court declines to hold Plaintiffs to such a *substantial likelihood* standard. The Court has previously discussed the inconsistencies in the Tenth Circuit's *likelihood of success on the merits* standard, and incorporates that discussion here. *See Sanchez v. Bondi*, No. 1:25–cv–02287–CNS, 2025 WL 2550646, at *1 n* (D. Colo. Aug. 20, 2025). Regardless, the Supreme Court, whose decisions bind this Court, recently made clear that the standard is the same as that set forth in *M.G.*, which the Court recited above: "To obtain that form of preliminary relief, [movants] must show that they are *likely to succeed on the merits*, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction would be in the public interest." *Mahmoud v. Taylor*, 606 U.S. 522, 546 (citation modified).

*Corp. v. Rosen*, No. 1:25–cv–12382, 2025 WL 2336107, at *3 (E.D. Mich. Aug. 13, 2025) ("But not only has Plaintiff not offered any means of reasonable notice, it has neither offered a reason why notice should not be required . . . . This is a fatal flaw that dooms Plaintiff's Motion." (citation modified)). And Defendants certainly have a point that Plaintiffs' efforts to provide notice, for Rule 65 purposes, are imperfect. *See, e.g.,* ECF No. 8 at 3. Nonetheless, the Court declines to accept Defendants' argument that any such imperfections or deficiencies demand denying Plaintiffs' motion on this basis alone. Put another way, the Court essentially presumes that Plaintiffs provided adequate notice, and proceeds from there.

### B. Plaintiffs' TRO Arguments

Before proceeding in its analysis of Plaintiffs' arguments, the Court makes a preliminary—yet core—observation: Much of Plaintiffs' request for TRO relief is premised on *past* conduct that occurred at the 2024 Pride Fest. *See, e.g.,* ECF No. 4 at 6 ("The event at issue *occurred* in a public park . . . ." (emphasis added)); *id.* at 7 ("Plaintiff alleges that he *engaged* in peaceful, non-disruptive expression . . . ." (emphasis added)); *id.* at 10 ("The Complaint alleges that Plaintiff *began* recording police conduct—a protected activity—and was immediately arrested within seconds." (citation modified)); *id.* at 12 ("Plaintiffs are likely to succeed on their malicious prosecution claims because . . . the criminal proceedings *terminated* in his favor." (emphasis added)); *id.* at 7 ("Plaintiffs . . . *were* targeted because of their speech and viewpoint . . . (emphasis added)).

The Court agrees with Defendants that, reading Plaintiffs' motion in its entirety, it is largely premised on events that occurred two years ago. *See* ECF No. 8 at 10

("Bergford and Fadden's request instead rests solely on the assumption that the events of 2024 will repeat themselves . . ."). And any request for injunctive relief—which is what Plaintiffs seek in their motion—cannot proceed from events in the past. *Compare* ECF No. 4 at 16 (requesting the Court "issue a temporary restraining order enjoining Defendants from unlawfully restraining them"), *with Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." (citation modified)), *and DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018). Therefore, Plaintiffs are wrong to argue that they are "likely to establish a First Amendment violation" by citing *past* conduct, such as when Mr. Bergford contends he "*engaged* in peaceful, non-disruptive expression." ECF No. 4 at 7 (citation modified).

But as a matter of *irreparable harm*, *even if* the Court considers such past events in its analysis and presumes that they occurred as Plaintiffs represent, the Court agrees with Defendants that Plaintiffs' request is "based on speculation about what may happen at a future event"—Pride Fest 2026—"not evidence that future injury is likely." ECF No. 8 at 7. *Cf.* ECF No. 4 at 13. Such speculation is insufficient to establish *irreparable harm* in the TRO context. *See, e.g., DTC Energy*, 912 F.3d at 1270 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will *surely result* without their issuance." (citation modified)); *Sells v. Pantoja*, No. CIV–25–731–HE, 2026 WL 927235, at *7 (W.D. Okla. Apr. 6, 2026) ("Plaintiff alleges past

6

harm and speculates about future harm. Those assertions are insufficient to warrant injunctive relief." (citation modified)).

Plaintiffs represent they "seek to attend" the event. ECF No. 4 at 16. *See also id*. at 13 ("Plaintiffs . . . wish to attend Douglas County PrideFest."). But to do what? Picket? Chant? To the extent that Plaintiffs challenge the 2026 Code of Conduct as "broad and lacking in specificity," ECF No. 4 at 14, the same could be said of Plaintiffs' description of what they want to do once they get to PrideFest. Which is to say, that such description— attend the event—is "lacking in specificity." *Id.* This dooms Plaintiffs' motion as a matter of *irreparable harm. See, e.g., Doe v. Bd. of Cnty. Comm'rs of Craig Cnty*., No. 11–CV– 0298–CVE–PJC, 2012 WL 2872790, at *9 (N.D. Okla. July 12, 2012) ("The Court can not grant declaratory or injunctive relief based on such a hypothetical chain of events." (citation modified)); *DTC Energy*, 912 F.3d at 1270; *Inception Mining, Inc. v. Danzig, Ltd*., 311 F. Supp. 3d 1265, 1281 (D. Utah 2018) ("Purely *speculative harm* does not amount to irreparable injury. An irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages." (citation modified)).

Fundamentally, Plaintiffs cannot show a "significant risk" of injury, *id.*, where they have not explained with sufficient specificity what conduct would give rise to such a risk. *See also Jabarah v. Wray*, No. 21–cv–01047–NYW–NRN, 2025 WL 53340, at *4 n.1 (D. Colo. Jan. 9, 2025), *report and recommendation adopted sub nom. Jabarah v. Patel*, No. 21–cv–01047–NYW–NRN, 2025 WL 794398 (D. Colo. Mar. 13, 2025) ("[A]n injunction be reasonably specific in identifying what acts are prohibited or required." (citation modified)).

So, for this and the other reasons set forth above, they have not met their *irreparable harm* burden.[4] The Court's conclusion is bolstered by evidence from the TRO record, and Defendants' *own representation* that the Town of Parker "will not enforce the 2026 Code of Conduct." ECF No. 8 at 10; *see also* ECF No. 8-3 at 2. This compounds the speculative nature of Plaintiffs' (undescribed) injury—Defendants represent they won't engage in the conduct that Plaintiffs contend is injurious.

But, considering this factor along with the *likelihood of success on the merits* factor, as Plaintiffs do in their response brief, *see* ECF No. 8 at 6 n.1, the Court agrees with Defendants that Plaintiffs have not met their burden as to this factor, *see id.* at 8.[5] Defendants' citation to *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 188 (3d Cir. 2008), is both instructive and persuasive. In *Startzell*, the Third Circuit addressed permitting schemes, such as the one at issue here, *see* ECF No. 8-2 at 3, and concluded a similar challenge was unsuccessful. *See id.* at 198 ("Appellants do not challenge the permitting scheme in and of itself as being an unconstitutional restriction of their speech. Rather, Appellants urge us to disregard Philly Pride's permit to hold OutFest because they believe the non-exclusive permit did not give the police the right to restrict their

---

[4] Such failure points to another issue, which is that based on the record it is clear Plaintiffs have known about PrideFest for months. While, in this case, the Court overlooks such a delay as *dispositive*, such a delay certainly cuts against concluding that Plaintiffs have met their *irreparable harm* burden. *See, e.g.*, *Andrew Wommack Ministries, Inc v. Polis*, No. 20–cv–02922–CMA–KMT, 2020 WL 5810525, at *3 (D. Colo. Sept. 29, 2020).

[5] Of course, Plaintiffs' failure to meet their *irreparable harm* burden is reason enough to deny Plaintiffs' motion. *See, e.g., Denver Homeless*, 32 F.4th at 1278. But for the sake of completeness, and because of the overlapping nature of the parties' briefs, the Court addresses the *likelihood of success on the merits* factor as well, bolstering its conclusion that Plaintiffs are not entitled to injunctive relief. The failure to meet their burden as to this factor is, coupled with Plaintiffs' failure as to *irreparable harm* shows that denying the motion is proper. *See id.*

8

speech. We have already made clear that Appellants possess a First Amendment right to communicate their message in a public forum. Yet, their rights are not superior to the First Amendment rights of Philly Pride, as permit-holder, to effectively convey the message of its event—'that we're out and proud of who we are'—and of the audience's ability to receive that message and experience the entire event." (citation modified)). *Startzell* continued: "The right of free speech does not encompass the right to cause disruption, and that is particularly true when those claiming protection of the First Amendment cause actual disruption of an event covered by a permit. The City has an interest in ensuring that a permit-holder can use the permit for the purpose for which it was obtained." *Id.* at 198.

Thus, not only is the PrideFest event valid as a *permitting* matter, but moreover it is clear that PrideFest has an area dedicated and available *specifically* for protesting. *See, e.g.,* ECF No. 8-4 at 3. And, as indicated above, both Defendants and Mr. Degenhart represent that the Code of Conduct will not be enforced. *See, e.g.,* ECF No. 8 at 10. Thus, the Court agrees with Defendants that Plaintiffs have "ample alternative channels" for engaging in their First Amendment activity. *Id.* at 9. And this, based on the record before the Court, is sufficient for Defendants and their permitted event to survive Plaintiffs' request for a TRO. *See Startzell*, 533 F.3d at 203 ("[T[here is no showing that Appellants were unnecessarily limited in conveying their message from the location to which they were ordered to move." (citation modified); *id.* at 202 ("Appellants had alternative ways to express themselves without causing disruption." (citation modified)). Especially where Plaintiffs have adduced *no* evidence that such areas are inadequate for reaching

PrideFest attendees. *See Startzell*, 533 F.3d at 202 ("Nonetheless, Appellants have not demonstrated that the avenues that remained were inadequate." (citation modified)). At bottom, it's clear, as Defendants argue, that protestors such as Plaintiffs enjoy access to "express their protest to any attendees of PrideFest." ECF No. 8 at 9. Therefore, they have not shown a *likelihood of success on the merits*, as they must. *See Denver Homeless*, 32 F.4th at 1278.

* * *

Plaintiffs' motion is premised on past events. That's improper for securing a TRO.[6] And even if such events bore relevance in the Court's analysis of the upcoming Pride Fest event, Plaintiffs have not raised any claim of *irreparable harm* above the speculative level.[7] Plaintiffs have also failed to show a *likelihood of success on the merits*, given the permitted nature of Defendants' event and record evidence showing the challenged Code of Conduct will not be impermissibly enforced, as well as that Defendants have clearly gone to lengths to ensure that protests, such as Plaintiffs, have access to the event such that attendees may view and receive their message. For these reasons, Plaintiffs have

---

[6] The Court also agrees with Defendants that this reasoning applies to Plaintiffs' remaining claims, including their Fourth Amendment claim for municipal liability, that Plaintiffs discuss in the TRO motion, not just their First Amendment claim. *See* ECF No. 8 at 11 n.2. Even more than Plaintiffs' First Amendment challenge, such claims are premised on past conduct from 2024. *See id.* ("First, all Bergford and Fadden's arguments regarding these claims solely involve past conduct, not a risk of future harm. Second, any future harm is entirely speculative where, as here, Bergford and Fadden fail to identify the conduct they seek to engage and that which they seek to enjoin, and instead presume arrests and unsuccessful prosecutions.").

[7] The Court notes that Plaintiffs appear to focus their *irreparable harm* arguments as to their First Amendment claim. *See* ECF No. 4 at 14. And while constitutional injuries can give rise to irreparable harm, *allegations* that some kind of constitutional injury *might* occur are not enough—especially here, where the nature of Plaintiffs' *irreparable harm* allegations and arguments are, as discussed above, wholly speculative and thus insufficient to garner injunctive relief.

not met at least two of their four TRO burdens, and so they have not shown entitlement to the relief they seek. *See, e.g., Denver Homeless*, 32 F.4th at 1278.

### IV.    CONCLUSION

Consistent with the above analysis, the Court DENIES Plaintiffs' Certified Emergency Motion for Temporary Restraining Order (TRO). ECF No. 4. It likewise DENIES AS MOOT Plaintiffs' pending motions to reassign this case, given that this case has already been assigned to a United States District Court Judge who, as the above analysis shows, is working today. *See* ECF No. 6; ECF No. 9. Moreover, denial of these motions is proper where the Court has ruled on and denied Plaintiffs' TRO motion.

DATED this 15th day of May 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

11